**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MICAELA CRUZ on her own behalf and on behalf of her minor child, A.C., and DONTAY CRUZ, on his own behalf, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 20 CV 00250 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO; CHICAGO POLICE OFFICERS DAVID SALGADO, XAVIER ELIZONDO, JOSEPH TREACY, ROBERTO RAMIREZ, RICHARD MOSTOWSKI, MICHAEL KARCZEWSKI, DANIEL PACELLI, DAVID PARDO, CARLOS NUNEZ, EDWIN UTRERAS, JA MCCLAIN, MJ HERNANDEZ, | ) ) ) ) ) ) ) ) ) ) | Judge Steven C. Seeger |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' ELIZONDO AND SALGADO'S
MOTIONS TO STAY**

Defendants Xavier Elizondo and David Salgado are former Chicago Police Department officers who were convicted in federal court of gross abuses of their powers as police officers. Plaintiffs allege that Elizondo, Salgado, and other Defendants victimized them in a manner that is similar to the conduct for which Elizondo and Salgado were convicted in federal court. The specific allegations raised by Plaintiffs in this lawsuit, however, had no role in the government's prosecution or sentencing of Elizondo or Salgado.

This is now the second time Salgado has moved to stay his participation in discovery. Dkt. 39; Dkt. 63. Elizondo has now also moved for a stay, filing a motion that is substantively identical to Salgado's motion (and nearly word for the word the same). Compare Dkt. 63 (Salgado motion) with Dkt. 67 (Elizondo motion). Plaintiffs take the same position they did the first time Salgado asked for a stay, at least with respect to Salgado: to limit the possibility that Salgado needs to choose between preserving their rights against self-incrimination or fully defending the civil action, Plaintiffs agree to

delay questioning Salgado about the specific overt acts alleged in his criminal indictment (for which he was convicted) until the Seventh Circuit issues its ruling pertaining to that conviction. The analysis is different with respect to Elizondo because he testified at the criminal trial. By testifying at his criminal trial, Elizondo already provided his version of the events at issue in the criminal case. Thus, requiring Elizondo to fully participate in discovery in the civil case now does not place him in the same situation as it might for Salgado.[1]

Defendants ask the Court for far more than the limited relief that Salgado should receive— they seek to delay their participation in discovery entirely, to a time that realistically will last beyond the fact discovery deadline set by this Court. The Court should reject this overbroad request. The Fifth Amendment concerns Elizondo and Salgado raise will not dissipate upon the conclusion of their criminal appeal. All other factors also favor denying the stay. Accordingly, Plaintiffs ask this Court to deny Elizondo and Salgado's motions to stay save for a limited stay in favor of Salgado regarding specific questions pertaining to the facts underlying his criminal conviction.

## BACKGROUND

Three Plaintiffs initiated this lawsuit on January 13, 2020 to seek redress for two separate alleged false arrests: a January 12, 2018 raid of Plaintiffs' home and false arrest, and a January 11, 2019 raid of Plaintiffs' home and false arrest. Based on the information known at this time, it appears that Elizondo and Salgado were present only for the January 2018 arrest and not for the January 2019 arrest. Indeed, both Elizondo and Salgado was arrested and charged via federal indictment in May 2018, so were no longer active police officers in January 2019.

---

[1] Plaintiffs' position with respect to Salgado is contingent on the assumption that Salgado does, in fact, file a Notice of Appeal. Plaintiffs further reserve the right to request the stay be lifted prior to the any Seventh Circuit decision if circumstances so warrant.

In March 2019, the federal government unveiled a seven-count superseding indictment against Elizondo and Salgado that charged them with conspiracy to commit theft, embezzlement, obstruction of justice, false statements to law enforcement, and conspiracy to deprive residents of Chicago of the right to be free from unreasonable searches pursuant to a warrant knowingly obtained through false and fabricated information. Ex. 1 (Criminal Superseding Indictment). Additionally, the superseding indictment alleged that Elizondo and Salgado submitted materially false search warrant applications and induced informants to provide false information to Cook County judges to fraudulently obtain warrants so they could steal items from Chicago residents. Ex. 1.

The superseding indictment outlined a number of specific overt acts that were at issue. Namely, the indictment alleged that:

(1) Both Elizondo and Salgado distributed PCP to Confidential Informant A on October 17, 2017;

(2) Salgado distributed marijuana as payment to Confidential Informant B on November 25, 2017;

(3) In response to information told to both Defendants, on December 18, 2017, Elizondo told CS-1 that he would give CS-1 and Confidential Informant A a portion of any property or narcotics received from a search of a residence;

(4) The next day, or on or about December 19, 2017, Salgado prepared a complaint for a "J Does" search warrant of a residence that he knew contained materially false information;

(5) That same day, December 19, 2017, both Defendants causes Confidential Informant A to appear before a Cook County judge and falsely pose as the source of information contained in the J. Doe search warrant application;

(6) That same day, December 19, 2017, Salgado falsely swore under oath to a Cook County judge;

3

(7) The next day, December 20, 2017, Elizondo communicated on a cellphone with CS-1 and Confidential Informant A while Salgado and other CPD officers executed the false "J. Doe" search warrant;

(8) On January 28, 2018, both Defendants stole $4,200 recovered during a search of a rental vehicle;

(9) The next day, January 29, 2018, after discovering that investigators had taken custody of the rental vehicle, both Defendants twice discussed Salgado removing property from inside his home, and Salgado subsequently departed work after his shift began; and

(10) The next day, January 30, 2018, both Defendants deleted data on their cell phones.

Ex. 1.

At Elizondo and Salgado's criminal trial, the government submitted evidence in support of these charges. None of the Plaintiffs are Confidential Informant A, B, or CS-1, and none of the Plaintiffs testified in the criminal case. In October 2019, months prior to the commencement of this lawsuit, Elizondo and Salgado were convicted of all counts. Elizondo testified at trial, and the government has alleged that he committed perjury on the stand. Ex. 5 at 5 (Sentencing Memorandum).[2]

As far as Plaintiffs are aware (Plaintiffs do not have the trial transcripts), neither the January 12, 2018 nor the January 11, 2019 incidents alleged in Plaintiffs' federal complaint were discussed during the criminal trial. Neither Elizondo nor Salgado suggest otherwise in their motions.

On February 24, 2020, Defendant Salgado filed his first motion to stay the proceedings. Dkt. 39. Plaintiffs filed a response in opposition, and the Court heard argument before denying the motion

---

[2] *See also* "Indicted Chicago police sergeant takes stand at corruption trial, claims he only pretended to be a dirty cop," Chicago Tribune, October 18, 2019, available at https://www.chicagotribune.com/news/criminal-justice/ct-chicago-cop-corruption-trial-20191019-cnlbxb6oqzfjfmthczxe3vva64-story.html (last visited June 11, 2020).

without prejudice. *See* Dkt. 41; Dkt. 46; Dkt. 59. The Court explained what information Salgado should provide if he chose to file another motion to stay. Dkt. 59. In particular, the Court asked for additional information pertaining to the similarity, overlap, or lack thereof between the allegations in Defendant Salgado's criminal case and Plaintiffs' allegations. Dkt. 59. The Court also inquired about the status of the Salgado's sentencing. Dkt. 59.

Elizondo and Salgado's sentencing hearing occurred on March 11, 2020. Dkt. 63 at 6; Dkt. 67 at 6. None of the Plaintiffs testified, and no evidence was presented pertaining to the January 12, 2018 or January 11, 2019 incidents that are the subject of this federal complaint. Ex. 2 (Criminal Sentencing Transcript). Thus, there is no direct overlap between the criminal case and Plaintiffs' individual claims against the Defendants.

Salgado was scheduled to be sentenced on March 23, 2020. Due to the public health emergency, the sentencing is now scheduled for July 15, 2020. Dkt. 63 at 6. Elizondo is currently scheduled to be sentenced on June 26, 2020. Dkt. 67 at 6. Needless to say, the ongoing public health crisis makes it far from certain that the sentencing will actually occur on this date. Salgado himself, in his motion, notes that the sentencing hearing is "currently scheduled" for this date, and qualifies its later assertion that a Notice of Appeal will be filed in early August by highlighting that is the case only "[p]resuming the sentencing proceeds" on July 15, 2020. Dkt. 63 at 6. Elizondo notes that he will file a Notice of Appeal by late July if his sentencing does not get postponed. Dkt. 67 at 6.

## DISCOVERY SCHEDULE IN THIS MATTER

This case is subject to the Mandatory Initial Discovery Pilot Project (MIDP). Because no one has yet answered the Complaint given the General Orders extending deadlines due to the COVID-19 pandemic, discovery has not commenced. On May 21, 2020, this Court ordered all Defendants except Salgado to respond by July 2, 2020, and Salgado to respond by July 16, 2020. MIDP responses are due 30 days after the filing of answers. Dkt. 61. Thus, under the current schedule, no documents need be

exchanged until 30 days after Defendants answer the complaint, or August 2, 2020 for non-Salgado Defendants and August 16, 2020 for Defendant Salgado, at the earliest. Dkt. 60.

In their joint status report, the parties proposed August 16, 2021 as a date to complete fact discovery. Dkt. 60. This Court believed that period was too long and set April 30, 2021 for close of discovery. Dkt. 61.

## LEGAL STANDARD

Stays of discovery are discretionary, and the party seeking a stay has the burden to demonstrate that the Court should exercise its discretion to grant a stay. *Indiana State Police Pension Trust v. Chrysler LLC*, 556 U.S. 961 (2009). Even where a defendant in a civil case may be forced to invoke his Fifth Amendment right to remain silent due to a related criminal proceeding, a stay is the "exception, not the rule." *See Estate of Swayzer v. Armor Correctional Health Services, Inc.*, No. 16-CV-1703, 2018 WL 1535953, *2-3 (E.D. Wis., Mar. 29, 2018).

"When deciding whether to grant a stay, courts consider six factors: (1) the posture of the criminal proceeding; (2) whether the civil and criminal matters involve the same subject; (3) whether the government entity in the criminal case is a party; (4) the burden the civil case will have on the defendants if a stay is denied …; (5) the interest of the civil-case plaintiff in proceeding expeditiously, and the potential prejudice the plaintiff will suffer from delay; and (6) the effect of granting or denying a stay on the public interest." *Hollinger Intern., Inc. v. Hollinger Inc.*, No. 04 C 698, 2008 WL 161683, at *2 (N.D. Ill. Jan. 16, 2008). Generally, even where a party might suffer irreparable injury, a stay is not a matter of right. *Indiana State Police Pension Trust*, 556 U.S. at 961. Moreover, "it is not unconstitutional to force a litigant to choose between invoking the fifth amendment in a civil case, thus risking a loss there, or answering the questions in the civil context, thus risking subsequent criminal prosecution." *Cruz v. City of DuPage*, No. 96 C 7170, 1997 WL 370194, at *1 (N.D. Ill. June 27, 1997). The *Cruz* court highlighted a D.C. Circuit Court decision that noted "the strongest case for deferring civil proceedings

until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action *involving the same matter.*" *Id.* at *2 (quoting *Securities & Exchange Comm'n v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)) (italics added).

## ARGUMENT

### I.  A consideration of all factors supports denying the stay.

This Court should, for the most part, deny Elizondo and Salgado's motions to stay discovery. Based on the current discovery schedule and the time it will likely take to resolve their forthcoming appeals, Elizondo and Salgado essentially ask the Court to excuse them from participating in discovery. Moreover, the allegations in Plaintiffs' Complaint do not involve the same subject matter as the criminal proceeding, the government is not a party to this lawsuit, and the interest of both the Plaintiffs and the public support denying a stay. Further, Plaintiff's agreement to stay discovery directed to Salgado on the overt acts at issue in the criminal prosecution mitigates any burden the civil case may have on Elizondo or Salgado. That is, Salgado will not have to choose between defending this case or testifying about the overt acts at issue in the criminal case. And Elizondo has already made that choice by testifying in the criminal case, so requiring his participation in discovery does not impose a further burden on him. Taking into account Plaintiffs' agreement to a limited partial stay with respect to Salgado, the fact that Elizondo and Salgado have already been convicted for the acts alleged in the criminal case also weighs against the broad stay request.

### A.  Elizondo and Salgado effectively request that the Court excuse them from participating in discovery.

Without specifying the exact time period, Elizondo and Salgado appear to request that they be excused from participating in discovery for at least the "pendency of the appellate process," Dkt. 63 at 6 and Dkt. 67 at 7, although they do not further define the "appellate process." Elizondo and Salgado do not explain whether they request the stay until the Seventh Circuit issues a decision, or until any further appeals to the U.S. Supreme Court are resolved, or for some other time period. And

if Elizondo or Salgado are successful in their appeal, they would almost certainly move to extend the stay. *See* Dkt. 63 at 7 ("If he is successful in that appeal, it is unknown how the Government would choose to prosecute the case."); Dkt. 67 at 8 (same for Elizondo).

Regardless, Elizondo notes that he will likely be filing a Notice of Appeal in late July, and Salgado notes that he will likely be filing a Notice of Appeal of the adverse verdict in his criminal case in early August. Dkt. 63 at 6; Dkt. 67 at 6. According to data from December 2019, the median time from filing a Notice of Appeal to Disposition of a case is 8.7 months in the Seventh Circuit. *See* U.S. Court of Appeals – Judicial Caseload Profile, Seventh Circuit.[3] A time period of 8.7 months from a Notice of Appeal filed in late July or early August 2020 is late April 2021, which is when fact discovery is scheduled to close in this matter. Dkt. 61. Accordingly, for all practical purposes, Elizondo and Salgado are asking not to even begin to participate in discovery until a time period at or after fact discovery is scheduled to close. Thus, in addition to the other reasons described below as to why a stay will prejudice Plaintiffs, the length of the requested stay in relation to the discovery schedule also prejudices Plaintiffs' ability to litigate this case.

### B. The facts alleged by Plaintiffs do not overlap with the facts at issue in Elizondo and Salgado's criminal case.

Defendants' motions detail the factual allegations by the U.S. Government and highlight that the allegations about Elizondo and Salgado's criminal activities go well beyond the individual act or acts charged in the indictment. *See* Dkt. 63 at 4-5. Namely, Elizondo and Salgado highlight the government's sentencing memorandum, which explains that "[f]rom approximately the spring of 2017 until January 2018, the defendants repeatedly offered cash, drugs, and other stolen goods to impoverished and addicted individuals to cause them to appear before State court judges in support

---

[3] *See* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appprofile1231.2019.pdf at 18 (last accessed June 11, 2020).

of false J. Doe search warrants," and that Elizondo and Salgado then "used these warrants" to burglarize, rob, forcefully enter homes and take property, "sometimes in the presence of the victims." Dkt. 63 at 4. As Plaintiffs noted in their prior written response, the allegations in their complaint— that Defendants used a bogus search warrant to ransack, burglarize, threaten, and torment Plaintiffs, and ultimately falsify charges against Micaela Cruz—are, indeed, similar to the allegations made by the government in the criminal case. *See* Dkt. 41 (Plaintiffs' Response to Defendant Salgado's (First) Motion to Stay Proceedings) ("Plaintiffs agree that the allegations made by them are 'similar' and 'related' to the facts underlying Defendant Salgado's criminal conviction.").

This Court, however, specifically informed Salgado that he should address not just the similarity but also the "overlap" between the two proceedings in any renewed motion. Dkt. 59. Neither Salgado nor Elizondo addressed the "overlap," because there is no overlap. Elizondo and Salgado were not convicted for any criminal conduct related to Plaintiffs; Plaintiffs did not testify in the criminal trial; and Plaintiffs were neither listed as witnesses nor testified at Elizondo or Salgado's sentencing hearing. To the best of Plaintiffs' knowledge, the incidents alleged in the instant civil complaint played no role in the trial or sentencing in either Elizondo or Salgado's criminal case.

### C. Plaintiffs' allegations against Elizondo and Salgado do not involve the same subject matter as the criminal case.

As noted above, Plaintiffs' allegations in the instant civil complaint played no role in the criminal case. The wrongdoing for which Plaintiffs seek redress was not alleged in the indictment, and no evidence was presented relating to these allegations at the trial or sentencing. Make no mistake, Plaintiffs allege that they were victims of a *similar* type of misconduct as the misconduct for which Elizondo and Salgado were convicted. But that does not mean the criminal case and the civil complaint involve the same subject matter.

The *Swayzer* court drew this exact distinction. The in that case made the same argument that Elizondo and Salgado make here—that is, the defendant requested a stay because the *Swayzer* plaintiff

alleged misconduct of a similar type that was alleged by the government in a pending criminal prosecution against the same defendant. The alleged misconduct in the criminal case, however, was based on incidents that had nothing to do with the *Swayzer* plaintiff. Just as in this case, the allegations in the criminal case in *Swayzer* concerned acts against different victims on different dates. *Swayzer*, 2018 WL 1535953, at *2-3. Based on this distinction, the *Swayzer* court determined that "the overall subject matter of the two cases is sufficiently distinct that this factor weighs against granting a stay." *Id.* at *3; *see also B.A. v. Bohlmann*, No. 09 CV 346, 2009 WL 3270124, at *3 (W.D. Wis. Oct. 8, 2009) (drawing same distinction). To the extent that the *Swayzer* court noted an overlap because "the criminal case will be covered by the civil case" during discovery, Plaintiff's agreement to stay discovery directed to Salgado regarding the specific facts at issue in the criminal case entirely mitigates that concern (given Elizondo's earlier decision to testify in the criminal trial).

### D. The government is not involved in the civil case.

When the government is involved in the civil matter, there is a *concern* that prosecuting authorities may use the civil discovery process to bolster the criminal prosecution. That concern is not present here because Plaintiffs are private citizens. Accordingly, this factor weighs against a stay as well. *See Doe v. City of Chicago*, 360 F.Supp.2d 880, 881-82 (N.D. Ill. Jan. 18, 2005) ("Other factors weigh in favor of denying Sergeant Herman's request for a stay. The civil action was not brought by the government, and the government, is not a party to the civil action.").

### E. The procedural posture of the criminal case favors denying a broad stay.

Defendants retain their Fifth Amendment rights through direct appeal in their criminal cases. Because Elizondo and Salgado have both already been convicted, however, there is limited to no risk that requiring them to participate in discovery in the civil case could lead to information that the government would use as evidence in a criminal trial against them or that doing so would compromise ongoing criminal investigations. *See Cruz*, 1997 WL 370194, at *3; *Salcedo v. City of Chicago*, No. 09–cv–

05354, 2010 WL 2721864, at *3 (N.D. Ill. July 8, 2010). That is particularly true for Elizondo, given the fact that he already testified at the criminal trial. *See, e.g., United States v. Kimberlin*, 805 F.2d 210, 237 (7th Cir. 1986) ("In any event a defendant who testifies waives the privilege as to all matters reasonably related to the subject matter of his direct examination."). And because Plaintiffs agree to delay questioning Salgado about the specific facts at issue in their criminal case, the fact that Fifth Amendment protections remain through direct appeal in a criminal case does not weigh in favor of a stay. Ultimately, Elizondo and Salgado's "fear of criminal liability rests merely upon the fact that the state retains the prerogative to reopen investigations and bring additional charges." *See Swayzer*, 2018 WL 1535953, at *3. That same concern will always be an issue, even after the direct appeal has run. *See id.* at *4 ("A stay is disfavored where defendants are under the mere threat of criminal charges.") (citations omitted). Accordingly, considering this case as a whole and Plaintiffs' partial agreement to the requested stay, the procedural posture of the criminal case does not favor a stay. *See id.* (where the procedural posture is such that there are mere indefinite fears that answering questions could lead to criminal charges, the factor weighs against a stay).

### F. A stay prejudices Plaintiffs.

Courts have almost universally concluded that a stay prejudices a plaintiff. *See, e.g., Swayzer*, 2018 WL 1535953, at *4 ("Plaintiffs obviously have a strong interest in having their cases resolved expeditiously and in obtaining prompt compensation for their injuries. As time passes, evidence disappears and memories fade; plaintiffs' cases rarely grow stronger with delays beyond what is necessary for their adequate preparation.") (internal citations omitted); *see also CMB Export, LLC v. Atteberry*, No. 4:13–cv–04051–SLD–JEH, 2014 WL 4099721, at *4 (C.D. Ill. Aug. 20, 2014); *Doe*, 360 F.Supp.2d at 882; *Cruz*, 1997 WL 370194, at *4; *Hollinger Intern., Inc.*, 2008 WL 161683, at *4.

Elizondo and Salgado assert that the prejudice to Plaintiffs is mitigated because they can proceed on discovery against other Defendants. Although technically true that Plaintiffs can proceed

with discovery against the other Defendants under (subject to the MIDP), Elizondo and Salgado are likely the two crucial Defendants relating to the 2018 incident. Salgado is the first arresting officer and reporting officer on the police reports, and Elizondo appears to have signed the alleged bogus search warrant. *See* Ex. 3 (Police Reports). And while Elizondo and Salgado assert that their request for a stay is not "indefinite," the practical reality is they request a stay that will almost certainly last until or even beyond the current close of fact discovery. Foregoing discovery from the two crucial Defendants for such a lengthy time period is prejudicial.

### G. The public's interest favors denying a stay.

Under similar circumstances, the *Swayzer* court explained that this factor weighed toward denying a stay because of the public's interest in the prompt disposition of civil litigation. 2018 WL 1535953, at *4. The *Swayzer* court did note the public's interest in ensuring a criminal process untainted by civil litigation. But, just as in *Swayzer*, Elizondo and Salgado cannot articulate how the criminal process would be tainted, especially given Plaintiffs' partial agreement to the motion and the fact that Elizondo already testified at the criminal trial.

### H. The harm Elizondo and Salgado might face by participating now is no greater than it will be following the appeal of their convictions.

Elizondo and Salgado assert that they will be irreparably harmed absent a stay because the government "has made clear that its interpretation of the criminal conduct is broader than what has already been presented." Dkt. 63 at 9; Dkt. 67 at 9. That assertion ignores the fact that presentation of evidence in the criminal case is complete. The trial is over, and the evidence presented at sentencing is complete.

So, to be clear, the government may very well believe that Elizondo's and Salgado's criminal conduct far exceeded the charged offenses. Plaintiffs agree. Indeed, Plaintiffs' allegations pertaining to their false arrests can fairly be described as alleging that Elizondo and Salgado engaged in criminal conduct. And Plaintiffs certainly plan to explore other acts of misconduct, including by Elizondo and

Salgado, throughout discovery in this matter—this discovery is plainly relevant and appropriate in support of Plaintiffs' *Monell* allegations against the City. But ultimately, whenever Plaintiffs explore these issues with Elizondo and Salgado, their concern about weighing potential criminal liability or asserting his Fifth Amendment privilege remains. It doesn't cease when the direct appeal is over or all other "potential avenues of relief exhausted." Dkt. 63 at 8; Dkt. 67 at 8. If the government believes it has a basis to re-indict Elizondo or Salgado for different crimes committed within a relevant statute of limitations—or that Elizondo or Salgado committed perjury in answering questions about alleged different crimes—the government can do so.

To that end, given that the presentation of evidence in the criminal case is complete—both at the trial and sentencing stages—the concerns that Elizondo and Salgado express in their motion about potential criminal liability for other acts will never actually dissipate. The concerns certainly do not dissipate upon the Seventh Circuit entering its order on Elizondo and Salgado's direct appeal. And with Plaintiffs' agreement to delay discovery relating to the actual overt acts at issue in the criminal prosecution, there is simply no basis to grant a broad stay.

## II. That other courts granted stays does not mean that this Court should do so.

Elizondo and Salgado point to other cases courts have granted their motions for a stay. Dkt. 63 at 2 (citing *Ramadan*, *Rosas*, *Robles*, *Boldon*, *Treadwell*, *Maldonado*, and *Teague*).[4] For one, many of those cases have settled, so their continued relevance at this point is minimal. *See Ramadan*, 18 CV 4020 (Dkt. 47), *Rosas*, 18 CV 3933 (Dkt. 52), *Robles*, 18 CV 4379 (Dkt. 78), *Boldon*, 18 CV 4233 (Dkt. 85). Second,

---

[4] Elizondo and Salgado further noted that they moved for a stay in the matter of *Simmons v. City of Chicago*, 20 CV 478 and *Soto v. City of Chicago*, 20 CV 1805. Plaintiffs' counsel in this matter also represent the plaintiff in *Simmons*, and they are filing a similar response and objection to the one filed herein. As for *Soto*, it appears Defendants' June 2, 2020 motion to stay was granted by Judge Lefkow the next day—or June 3, 2020—without any response being filed. *See Soto* Dkts. 40-41.

whether settled or not, it does not appear the plaintiffs in any of those cases opposed the stay. *See*, *e.g.*, *Maldonado v. Elizondo* (Dkt. 44) (granting "unopposed" motion to stay).[5]

Finally, save for *Soto* (which was ruled upon without a responsive pleading), all of the motions to stay were filed long before to the conclusion of Elizondo and Salgado's criminal trial. In those circumstances, the concerns that resonate throughout the cases allowing a stay are much greater. For example, the plaintiff in *Treadwell* was listed on the government's initial witness list (and in fact testified at the sentencing hearing). Ex. 4 (Government's Initial Witness List in Criminal Case). If the stay were not granted, civil discovery could have interfered with the criminal case, and the untenable situation of choosing between preserving the right against self-incrimination or fully defending the civil action would have been squarely at play. *See Cruz*, 1997 WL 370194, at *3. Plaintiff Micaela Cruz was also on the government's initial list (but removed from later ones), and in a counter-factual world where Elizondo and Salgado were moving to stay their participation in this case before their criminal trial, with Cruz as a potential witness, she may well have agreed to a broader stay. Indeed, that very well may be why all of the other plaintiffs agreed to the stay at the time—the government could always amend to add them and the concerns that resonate throughout the cases (such as civil discovery interfering with the criminal case) were very much at play.

But that time has passed. There is no more evidence to be presented in Elizondo and Salgado's criminal case. Elizondo and Salgado's concerns are no greater now than they will be after their appeal is completed. Therefore, the prior rulings on the stay issue in other cases are not relevant to the current motion.

---

[5] A review of the other orders does not make it readily apparent whether the motions were opposed or unopposed. However, it does not appear a written response or objection was filed in any case.

**CONCLUSION AND SPECIFIC REMEDY REQUESTED**

Elizondo and Salgado ask to postpone their participation in discovery to a time that, at minimum, will be near or past the fact discovery deadline set in this case. This Court should deny this request.

Plaintiffs propose that this Court grant a limited stay, only for Salgado and only as it pertains to questions about the specific criminal acts alleged in the government's superseding indictment. Ex. 1. Because this partial stay is likely to stay in effect past the April 30, 2021 fact discovery deadline, Plaintiffs request that this Court allow that portion of fact discovery to occur after the current fact-discovery deadline but before dispositive motions.

Respectfully submitted,

/s/ Joshua Tepfer
*One of Plaintiffs' Attorneys*

Jon Loevy
Arthur Loevy
Scott Rauscher
Joshua Tepfer
Theresa Kleinhaus
Loevy & Loevy
311 North Aberdeen Street, Third Floor
Chicago, Illinois 60607
Phone: (312) 243-5900