# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICAELA CRUZ on her own behalf and on behalf of her minor child, A.C., and DONTAY CRUZ, on his own behalf, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) 20 CV 00250 |
| v. | )<br>) |
| CITY OF CHICAGO; CHICAGO POLICE OFFICERS DAVID SALGADO, XAVIER ELIZONDO, JOSEPH TREACY, ROBERTO RAMIREZ, RICHARD MOSTOWSKI, MICHAEL KARCZEWSKI, DANIEL PACELLI, DAVID PARDO, CARLOS NUNEZ, EDWIN UTRERAS, JA MCCLAIN, and MJ HERNANDEZ, | ) Judge Steven C. Seeger<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

In January 2018, a group of Chicago Police officers executed a bogus search warrant and needlessly held a twelve year old girl, A.C., and her sixteen year old brother, Dontay, at gunpoint. As if that was not enough, the officers also fabricated heroin charges against A.C. and Dontay's mom, Micaela Cruz. Almost exactly one year later, another group of Chicago Police officers executed another bogus search warrant and fabricated more drug charges against Micaela Cruz, an event that Ms. Cruz alleges was taken in relation for trying to expose the first corrupt search. All charges resulting from both searches were ultimately dismissed. Plaintiffs Micaela Cruz, A.C. Cruz, and Dontay Cruz now seek redress for these egregious violations of their rights.

Plaintiffs' Complaint describes the alleged wrongdoing in more than enough detail to satisfy Rule 8's pleading requirement, and the conduct plainly violated Plaintiffs' constitutional rights. All three Plaintiffs allege that these officers undertook this conduct as concerted action intended to harm Plaintiffs and that such conduct was conducted pursuant to the policies, customs, and practices of the City of Chicago. Indeed, two of the Defendants in the case—Xavier Elizondo and David Salgado—were recently convicted and sentenced in federal court based on their pattern of corrupt acts as police officers. The criminal case against them included evidence of bogus searches like those inflicted on Plaintiffs.

The purpose of Section 1983 is to deter and redress violations of constitutional rights by government officials. Plaintiffs' allegations that Defendants fabricated evidence, withheld exculpatory evidence, pointed guns at minor Plaintiffs for no reason, and maliciously prosecuted Ms. Cruz adequately allege violations of Plaintiffs' constitutional rights. Indeed, the Defendants do not dispute that Ms. Cruz has adequately alleged a constitutional violation when she claims that the Defendants framed her. Rather, they dispute which part of the Constitution gives rise to her claim, and they dispute whether she has identified with particularity which Defendants committed which

alleged wrongful acts. As described below, Plaintiffs are not required to do so at this stage, a rule that is particularly appropriate in a case involving officers who abused their authority by waking up minor children at gunpoint without even announcing their office, making it all but impossible for the Plaintiffs to identify the particular officers with specificity at this stage in the case.

Although Defendants argue that A.C. and Dontay's excessive force claim fails as a matter of law, they do not identify any case law or constitutional principle that would allow them to hold children at gunpoint for no reason. Nor does any such authority exist. Thus, the excessive force claim should survive as well. Plaintiffs' state law claims for conspiracy and intentional infliction of emotional distress are also well-pled. Accordingly, with the exception of any malicious prosecution claim with respect to Micaela Cruz's 2018 arrest, which she is not pursuing, the Court should deny Defendants' motion to dismiss.

## FACTUAL BACKGROUND

In January 2018, Defendant Officers David Salgado, Xavier Elizondo, Joseph Treacy, Roberto Ramirez, Richard Mostowski, Michael Karczewski, Daniel Pacelli, David Pardo, Carlos Nunez and other Unknown Officers ("2018 Defendant Officers") obtained and executed a bogus search warrant for Plaintiffs' home. Dkt. 1 ¶ 15.

When the officers burst into the home, Ms. Cruz was not there, but Dontay Cruz (age 16 at the time) was at home with his three younger siblings, A.C. (age 12), A.J. (age 6) and B.J. (age 4). *Id.* ¶ 16. Dontay was in bed when the Defendant Officers entered. *Id.* ¶ 17. The 2018 Defendant Officers awoke Dontay by shining a flashlight into his eyes and pointing guns at his head. *Id.* They did not identify themselves as police officers. *Id.* ¶ 18. Some of the 2018 Defendant Officers grabbed Dontay out of his bed and handcuffed him. *Id.* ¶ 19.

The 2018 Defendant Officers instructed Dontay to call his mom and tell her to come home but not to tell her that police officers were in the house. *Id.* ¶ 20. Mr. Cruz then called his mom in

2

the presence of some of the 2018 Defendant Officers. *Id.* ¶ 22. The 2018 Defendant Officers ransacked the apartment, damaging various fixtures and property in the apartment, all while holding Dontay and 12-year-old A.C. at gunpoint. *Id.*

When Ms. Cruz arrived home, the 2018 Defendant Officers falsely claimed they found heroin in her bedroom. *Id.* ¶ 25. Based on this fabrication Ms. Cruz was arrested, detained, and eventually faced criminal charges. *Id.* ¶¶ 26, 29. The charges for were later dismissed. *Id.* ¶ 30.

Shortly after Ms. Cruz's January 2018 arrest, Defendants Xavier Elizondo and David Salgado were taken off street duty because of allegations they falsified search warrants. *Id.* ¶ 42. On May 10, 2018, Defendants Elizondo and Salgado were arrested and charged via federal indictment in the Northern District of Illinois. *Id.* ¶ 43. The indictment charged, *inter alia*, conspiracy to deprive residents of the right to be free from unreasonable searches pursuant to a warrant knowingly obtained through false and fabricated information. *Id.* The indictment also alleged that Defendants Elizondo and Salgado submitted materially false search warrant applications to fraudulently obtain warrants so Defendant Officers could seize and steal items from Chicago residents. *Id.* ¶ 44. On October 22, 2019, Defendants Elizondo and Salgado were convicted on all counts. *Id.* ¶ 45.

In January 2019, Defendant Officers Edwin Utreras, Ja McClain, MJ Hernandez, and other unknown Officers ("2019 Defendant Officers") raided Plaintiffs' home. *Id.* ¶ 34. Just as with the earlier search, the 2019 Defendant Officers fabricated a case against Ms. Cruz for illegal drugs she did not possess. *Id.* at 36. Again, based on a fabrication, Ms. Cruz was arrested, detained, and eventually faced criminal charges. *Id.* ¶¶ 37, 39. The charges for this arrest were dismissed. *Id.* ¶ 40.

Plaintiffs allege that the Individual Defendants' misconduct was undertaken pursuant to the polices, practices, and customs of the Chicago Police Department, including policies, practices, and customs of fabricating evidence, using excessive force, arresting individuals without probable cause,

3

covering up the misconduct of other officers, and failing to discipline the officers who committed this misconduct. *Id.* ¶¶ 46-90.

In short, Plaintiffs A.C. and Dontay Cruz suffered excessive force at the hands of Chicago Police officers and Plaintiff Ms. Cruz was wrongfully arrested, detained, and charged twice. *Id.* ¶¶ 26, 37. Defendants' misconduct caused severe damage. *Id.* ¶¶ 91, 92.

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). At this stage, "the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Plaintiffs need to pass only "two easy-to clear hurdles" to survive Defendants' motion to dismiss: (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests," and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" does not mean the Court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, the complaint must merely "give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis in original).

## ARGUMENT

**I.     Plaintiffs' Complaint provides Defendants with adequate notice of the allegations.**

Courts in the Seventh Circuit recognize that plaintiffs in civil rights cases are not always in a position to precisely identify which police officer committed which part of each wrongful act when they file suit. Case law further recognizes that dismissing cases for failure to provide that level of

4

detail would allow officers to act with impunity. Defendants nonetheless seek dismissal on the ground that allegations levied against "Defendant Officers" amount to what they call impermissible group pleading. Dkt. 73 at 5-7. The Court should deny this request.

The Seventh Circuit has explained that "Rule 8(a) is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single instance of misconduct in the complaint to every single officer […] Rather, the key is to generally name 'the persons responsible for the problem.'" *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Along those lines, and contrary to Defendants' assertion otherwise, "[t]here is no 'group pleading' doctrine, per se, that either permits or forbids allegations against defendants collectively; 'group pleading' does not violate Fed. R. Civ. P. 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims.'" *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019), quoting *Lattimore v. Vill. of Streamwood*, No. 17C8683, 2018 WL 2183991, at *4 (N.D. Ill. May 11, 2018).

Here, Plaintiffs' Complaint puts the Defendants on notice by alleging that the "Defendant Officers" involved in the 2018 search obtained a bogus search warrant, unlawfully searched Plaintiffs' home, and used excessive force during that search, and falsely arrested Ms. Cruz, and that the "Defendant Officers" involved in the 2019 search committed similar misconduct. Thus, Plaintiffs allege that the 2018 Defendant Officers violated Plaintiffs' rights individually and together as members of a conspiracy in January 2018, and that the 2019 Defendant Officers did the same in January 2019. This is more than sufficient to satisfy Rule 8. *See, e.g.*, *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2019) (where allegations against "Defendants" pertain to each defendant, a complaint has adequately pled the personal involvement required by Rule 8); *see also Robles*, 354 F.Supp.3d 873 (denying motion to dismiss case against Defendants Elizondo and Salgado on group pleading grounds); *Starks v. City of Waukegan*, 946 F.Supp.2d 780, 787 (N.D. Ill. May 21, 2013) (denying motion to dismiss complaint which included group pleading for a section 1983 claim).

5

*Robles v. City of Chicago*, which also involved Defendants Elizondo and Salgado, is particularly instructive. In *Robles*, Raul Robles alleged that a team of officers working under and in conjunction with Elizondo and Salgado obtained search warrants based on fabricated evidence. 354 F.Supp.3d at 874. Furthermore, Robles alleged the "Defendant Officers" executed an unlawful search of his home based on the bogus search warrant and robbed him of several valuable personal belongings. *Id.* Robles asserted both a Fourth Amendment claim and a conspiracy claim. *Id.* The Defendants there, as they do here, moved to dismiss on the grounds that "the complaint relies on 'group pleading' that fails to provide them with notice of what each defendant is alleged to have done to violate the plaintiff's rights." *Id.* The court rejected Defendants' position, explaining that:

> Robles alleges unequivocally that "the Defendant-Officers" obtained a bogus warrant, unlawfully searched his home, and stole his property, and his response brief confirms that the term "Defendant-Officers" encompasses all of the individual defendants in this case. Thus, each of the defendant officers is alleged to have been a member of a team that collectively conspired to, and did, jointly rob Robles by obtaining a search warrant with fabricated evidence and seizing cash, firearms, and other valuable property found in the home. Each defendant is alleged to have participated personally in the unlawful search and in the seizure and theft of Robles' property.

*Id.* at 875.

The *Robles* court held that the use of 'Defendant Officers' in the complaint provided adequate notice to the Defendants and denied the motion to dismiss. *Id.* at 877. The court noted that "a complaint needn't allege every detail about each individual's participation to plausibly allege their involvement or to put them on notice of the nature of the claim." *Id.* at 876. The court further explained that "[t]he defendants here are alleged to have operated as a coordinated unit working to pull off a common objective and the complaint plainly alleges that all of the defendants participated in the challenged conduct—namely, the unlawful search (and the conspiracy to conduct it)." *Id.* at

6

876. As described above, that is what Plaintiffs allege here as well, which sufficiently places Defendants on notice about the claims against them.

Defendants cite to the Northern District case *Carter v. Dolan*, No. 08 CV 7464, 2009 U.S. Dist. LEXIS 53735 (N.D. Ill. June 25, 2009), to support their assertion that pleading against 'Defendant Officers' is deficient for purposes of a complaint. As an initial matter, to the extent that *Dolan* rejects this type of group pleading, it is out of step with the overwhelming (and more recent) case law that permits group pleading in the civil rights context when the complaint gives sufficient notice of the alleged wrongdoing. As the case law recognizes, forbidding this type of pleading in the civil rights context would simply motivate officers to hide their identities while engaging in misconduct in a way to further immunize themselves. *See e.g.*, *Robles*, 354 F.Supp.3d 873 at 877. In any event, *Dolan* does not help Defendants because it allowed a complaint to proceed based on allegations that certain police officers illegally entered an apartment. *See id.* at *4.[1] Nor is this case similar to *Liera v. City of Chicago*, No. 13 CV 9032, 2014 WL 3921359 (N.D. Ill. Aug. 5, 2014), where plaintiff failed to identify which of the thirty-five officers were at the locations of the alleged misconduct.

Contrary to Defendants' arguments, Rule 8 does not require Plaintiffs to identify which officers committed which misdeeds at the pleading stage. 'Such a pleading standard would effectively allow police officers to violate constitutional rights with abandon as long as they ensured they could not be individually identified, even if liability for acting in concert (or for aiding and abetting each other) would otherwise apply." *Robles*, 354 F.Supp.3d 873 at 877; *see also Horton v. City of Rockford*, 18 C 6829, 2019 WL 3573566, at *3 (N.D. Ill. Aug. 6, 2019) (refusing to dismiss civil rights complaint that alleged what wrongful conduct occurred but did not "specify which Defendant Officer is responsible for which exact occurrence of misconduct"); *Kuri v. City of Chicago*, No. 13 C 1653, 2014

---

[1] The Westlaw cite for the *Carter* decision is 2009 WL 1809917.

7

WL 114283 at *7 (N.D. Ill. Jan. 10, 2014) (allowing group pleading for a malicious prosecution claim where "[the] complaint is coherent, and the basis of his claim is easily understood"). Plaintiffs' complaint provides Defendants with adequate notice of the allegations against them, and the Court should deny their motion to dismiss on group pleading grounds.

**II.     Plaintiff Micaela Cruz states a valid Fourteenth Amendment Due Process claim.**

Ms. Cruz alleges that she was arrested, detained, and charged based on fabricated evidence and that exculpatory evidence was withheld from her. Dkt.1 ¶¶ 98-105. Defendants do not contest that such conduct constitutes a constitutional violation. *See Whitlock v. Brueggeman*, 682 F.3d 567, 580 (7th Cir. 2012) ("We have consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way."); *Domiguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) ("withholding material exculpatory evidence from the defense and prosecutor… and fabricating evidence…There was and is no disputing that such conduct violates clearly established constitutional rights."); *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018) (allegations of fabrication of evidence support a Due Process violation if the fabricated evidence is used in support of the prosecution, even pretrial).

Defendants' sole rebuttal to Plaintiffs' Due Process claims are that the claims really belong under the rubric of the Fourth Amendment for unlawful pretrial detention. Dkt. 73 at 10. In support of this assertion Defendants rely on *Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019), but subsequent Supreme Court precedent shows that *Lewis* is no longer good law. Specifically, the United States Supreme Court decision in *McDonough v. Smith* demonstrates *Lewis* is no longer sound. *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019).

In *Lewis*, the plaintiff alleged that he spent two years in pretrial detention based on police reports that falsely indicated that he unlawfully possessed a firearm. *Lewis,* at 474. The charges

against him were ultimately dropped and he sued the City of Chicago and six police officers. *Id.* The Seventh Circuit held that the Fourth Amendment, rather than the Fourteenth Amendment, governs claims of allegedly unconstitutional pretrial seizures. *Id.* at 479 ("the Fourth Amendment, not the Due Process Clause, is the source of the right in a § 1983 claim for unlawful pretrial detention, whether before or after the initiation of formal legal process."). The Seventh Circuit decided *Lewis* in January 2019. Later that year, the Supreme Court decided *McDonough*.

In *McDonough,* the Supreme Court considered a case brought by a plaintiff who, like Plaintiff here, alleged a claim under the Fourteenth Amendment. *McDonough,* at 2154. The plaintiff in *McDonough*, like Plaintiff here, alleged that he was arrested, deprived of his liberty, and prosecuted based on fabricated evidence. *Id.* at 2154. And just as Plaintiff Micaela Cruz was not convicted, the plaintiff in *McDonough* was ultimately acquitted of the charges. *Id.* The Supreme Court was tasked with determining when the pretrial detention claim accrued. *Id.* at 2154.

The Supreme Court in *McDonough* accepted the Second Circuit's assumption that the pretrial deprivation of liberty is governed by the Fourteenth Amendment due process clause. *Id.* at 2155. The Court also left open the possibility that other constitutional provisions—like the Fourth Amendment—might provide additional safeguards against fabricated evidence. *McDonough,* at 2155 n. 2 ("In accepting the Court of Appeals' treatment of McDonough's claim as one sounding in denial of due process, we express no view as to what *other* constitutional provisions (if any) might provide safeguards against the creation or use of fabricated evidence enforceable through a 42 U.S.C. §1983 action.") (emphasis added); *see also McDonough,* at 2156 n. 3 (declining to define how a federal malicious prosecution claim under § 1983 might differ from a fabricated evidence claim). The Court held that when a plaintiff faces allegedly unconstitutional detention pretrial but is not convicted, a Fourteenth Amendment claim for allegedly illegal pretrial detention begins to run after the criminal process ends. *McDonough,* at 2158. In reaching that conclusion, the Supreme Court

9

necessarily accepted the premise that a Fourteenth Amendment claim exists in such a circumstance, which means that *Lewis'* contrary holding is no longer good law. *Hutto v. Davis*, 454 U.S. 370, 374–75, (1982) (lower courts must respect the hierarchy of the federal court system and adhere to Supreme Court precedent).

Because the law as to this claim has been fluid, another judge in this district recently declined to dismiss a Fourteenth Amendment due process claim where it shares the same factual predicate as the Fourth Amendment pretrial detention claim. *Culp v. Flores*, No. 17 C 252, 2020 WL 1874075, at *3 (N.D. Ill. Apr. 15, 2020) (because Seventh Circuit case law did not conclusively answer whether plaintiff had a viable Fourteenth Amendment claim and because discovery on the Fourth and Fourteenth Amendment claims would be coextensive, the Court declined to dismiss the Fourteenth Amendment claim on the pleadings). The Court should likewise decline to dismiss Plaintiff's Fourteenth Amendment due process claim.

### III. Plaintiffs A.C. and Dontay Cruz adequately allege that the Defendants violated the Fourth Amendment by holding them at gunpoint for no reason.

Plaintiffs' complaint contains sufficient factual allegations for a claim of excessive force. Plaintiffs allege that the 2018 Defendant Officers held at least A.C., age 12 at the time, and Dontay Cruz, age 16 at the time, at gunpoint as they ransacked the apartment. Dkt. 1 ¶¶ 16, 23. Defendants appear to take an astounding position: that it is constitutional to needlessly hold children at gunpoint as long as they do so while searching the children's home, and even if the search was based on a bogus warrant. Dkt. 73 at 7-8. Fortunately, this is not the law.

Force is excess, and violates the Constitution, if its use was objectively unreasonable. *See Saucier v. Katz*, 533 U.S. 194, 204-205 (2001). Determining whether force is excessive "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*,

10

490 U.S. 386, 394 (1989). Put simply, an excessive force inquiry asks "whether the force used to seize a suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended." *McDonald v. Haskins*, 966 F.2d 292, 294 (7th Cir. 1992).

Here, Defendant Officers held two children at gunpoint in their own home for no good reason while entering a home, executing a search, trashing a home, and fabricating evidence within a home that they only accessed via fraudulently obtaining a bogus search warrant. Dkt.1 ¶ 95. Holding individuals, and particularly children, at gunpoint when they pose no immediate threat, constitutes excessive force. *See Jacobs v. City of Chicago*, 215 F.3d 758, 773-74 (7th Cir. 2000) (officers used excessive force when they were executing a search warrant and pointed loaded weapons for ten minutes at an unarmed man who had done nothing to evade arrest); *see also McDonald v. Haskins*, 966 F.2d 292, 294-95 (7th Cir. 1992) (pointing a gun at a nine-year old child during a search and threatening to shoot was "objectively unreasonable").

Ignoring the fact-intensive inquiry required for excessive force cases, Defendants claim that entering a residence with weapons drawn does not constitute excessive force under the Fourth Amendment. Dkt. 73 at 8. But while simply entering a home with weapons drawn is not a *per se* violation of the Fourth Amendment, it can be where, as here, the force was entirely unjustified and directed at children. The Court should permit Plaintiffs' excessive force claims to proceed.

**IV.** **Plaintiffs state a claim for Intentional Infliction of Emotional Distress.**

To prevail on a claim of IIED, Plaintiffs must show that (1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010). To meet the "extreme and outrageous" standard, the challenged conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Id.*; *see also Doe v.*

11

*Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (conduct is of an extreme and outrageous character where "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'").

Plaintiffs allege Defendant Officers fabricated evidence to falsely convict Ms. Cruz of a crime, ransacked Plaintiffs' home, and pointed guns towards children in their own home. Dkt.1 ¶¶ 2, 23. It is difficult to imagine more extreme or outrageous behavior, and it certainly cannot be regarded as tolerable in a civilized community. *See*, *e.g.*, *Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1028 (N.D. Ill. 2003) ("If, as alleged, defendants fabricated false or misleading evidence of Carroccia's guilt or concealed exculpatory evidence from prosecutors, that behavior is sufficiently 'outrageous' to support a claim for intentional infliction of emotional distress."). Plaintiffs have stated a valid IIED claim.

**V.      Plaintiffs have adequately alleged their conspiracy claim.**

Defendants argue Plaintiffs "failed to allege the existence of any conspiracy." Dkt. 73 at12. Not so. Plaintiffs allege that Defendant Officers used a bogus warrant to invade her home, ransack her apartment, and falsely arrest her for a narcotics crime she did not commit. Dkt. 1 ¶¶2-3, 28, 38. Plaintiffs further allege that Defendant Officers Salgado and Elizondo were part of an ongoing scheme to fraudulently obtain materially false search warrants, including inducing informants to provide false information and manipulating Cook County judges. *Id.* ¶¶ 4-5. Plaintiffs have pled that Defendant Officers came to an agreement to violate her constitutional rights and committed overt acts in furtherance of that agreement. *Id.* ¶¶ 122-129.

"To state a claim for civil conspiracy under Section 1983, a plaintiff must allege facts from which the Court may reasonably infer there was (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Wheeler v. Piazza*, 364 F.Supp.3d

12

870, 880 (N.D. Ill. Mar. 5, 2019) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)) (internal quotation omitted). All a plaintiff need allege is "a plausible account of a conspiracy," *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). Plaintiffs allege that 2018 Defendants and 2019 Defendants took steps to obtain bogus warrants—including manipulating purported informants as well as Cook County judges—and "[i]t is a challenge to imagine a scenario in which" the Defendants' alleged illegal actions "would not have been the product of a conspiracy." *Id.*

Defendants offer no support for their motion to dismiss the conspiracy claim beyond alleging that "plaintiffs do nothing more than offer vague and general allegations that all defendant officers conspired with one another." Dkt. 73 at 14. Defendants assert that a plaintiff must allege facts that show a party knowingly and voluntarily participated in the alleged conspiracy *Id.* at 13-14. But a party may be held liable as a conspirator even if they have not "agreed on the details of the conspiratorial scheme or even know who the other conspirators are," so long as they have generally agreed to participate in a conspiracy. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

For purposes of a motion to dismiss, "all that a complaint alleging a … § 1983 conspiracy needs to aver is the parties to the alleged conspiracy, the general purpose of the alleged conspiracy, and the approximate date of the alleged conspiracy." *Caine v. Burge*, No. 11 C 8996, 2012 WL 2458640, at *9 (N.D. Ill. June 27, 2012) (abrogated in part on other grounds). *See also Heidelberg v. Manias*, 2019 WL 4862069, at *1-4 (C.D. Ill. Mar. 26, 2019) (declining to dismiss conspiracy claim where plaintiff alleged that defendants violated his constitutional rights and that they agreed to do so in a conspiracy). Here, Plaintiffs allege Defendant Officers conspired to ransack the Cruz home and conspired to retaliate against Plaintiff Ms. Cruz for her efforts to expose the corruption of police officers. Dkt. 1 ¶¶ 124, 140. These allegations are sufficient to state a conspiracy claim.

13

## VI. Plaintiffs agree to the dismissal of Micaela Cruz's state-law malicious prosecution claim to the extent it is based on the 2018 arrest.

Defendants seek the dismissal of Ms. Cruz's state-law malicious prosecution claim (Count V) as untimely to the extent that it is based on her 2018 arrest. Plaintiffs agree to the dismissal of this part of the claim. Defendants do not, and could not, seek dismissal of the claim on this ground with respect to her 2019 arrest.

## VII. Plaintiff Micaela Cruz has adequately pled a First Amendment retaliation claim.

Defendant asks the Court to dismiss Plaintiff's First Amendment claim on the grounds that plaintiff, "fails to sufficiently allege that she had engaged in activity protected by the First Amendment." Dkt. 73 at 15. Plaintiff alleges her house was ransacked and she was falsely arrested in retaliation for her complaints against Defendant Officers Elizondo and Salgado. *See* Dkt. 1 ¶ 41.

To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) she engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Woodruff v. Mason,* 542 F.3d 545, 551 (7th Cir.2008) (quoting *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir.2006)).

Further, to prevail on a retaliation claim the plaintiff need only show that the defendant intended to interfere with the plaintiff's first amendment rights and that she suffered some injury as a result. *Dempsey v. Johnson*, 69 N.E.3d 236, 246 (App. Court of Ill. Nov. 10, 2016) (citing *Arizona Students Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867) (9th Cir. 2016)). "The plaintiff is not required to demonstrate that her first amendment rights were actually suppressed or inhibited." *Id.* Ms. Cruz has adequately alleged that she engaged in protected activity by trying to expose police misconduct, and that she faced retaliation in the form of a bogus search and false criminal charges. The Court should therefore deny Defendants' motion to dismiss this count as well.

14

## CONCLUSION

For the reasons stated above, the Court should deny Defendants' motions to dismiss on all counts other than Micaela Cruz's malicious prosecution claim as it relates to her 2018 arrest.

Respectfully submitted,

/s/ Scott Rauscher
*One of Plaintiffs' Attorneys*

Jon Loevy
Arthur Loevy
Scott Rauscher
Joshua Tepfer
Theresa Kleinhaus
Loevy & Loevy
311 North Aberdeen Street, Third Floor
Chicago, Illinois 60607
Phone: (312) 243-5900